Citation Nr: 1237387 
Decision Date: 10/31/12 Archive Date: 11/09/12

DOCKET NO. 06-25 660 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Boise, Idaho


THE ISSUE

Entitlement to an initial disability rating in excess of 10 percent for epicondylitis of the left elbow. 


REPRESENTATION

Appellant represented by: Veterans of Foreign Wars of the United States


ATTORNEY FOR THE BOARD

Jennifer Hwa, Counsel






INTRODUCTION

The Veteran served on active duty from May 2000 to May 2004. Thereafter, he had periods of active duty for training in the Army Reserve from May 2004 to December 2006. 

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a January 2005 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO), which awarded service connection for epicondylitis of the left elbow and assigned an initial noncompensable rating effective June 1, 2004. 

In March 2007, the Veteran withdrew his request for a Travel Board hearing. See 38 C.F.R. § 20.704(e) (2012). 

In April 2009, the Board remanded the issue to the RO via the Appeals Management Center (AMC) in Washington, DC for further evidentiary development. Thereafter, in a January 2011 rating decision, the AMC increased 
the rating for the Veteran's service-connected epicondylitis of the left elbow to 10 percent, effective June 1, 2004. However, as that grant did not represent a total grant of benefits sought on appeal with regard to that issue, the claim for increase remains before the Board. AB v. Brown, 6 Vet. App. 35 (1993).

In June 2011, the Board again remanded the claim for further development.

In October 2011, the Veteran submitted to the Board additional evidence for consideration in connection with the claim on appeal. A waiver of RO jurisdiction for this evidence was received in a written statement dated in November 2011 that is included in the record. The Board accepts this evidence for inclusion in the record on appeal. See 38 C.F.R. § 20.1304 (2012).

In January 2012, the Board again remanded the claim for further development. 

The Board notes that, in addition to the paper claims file, there is a paperless, electronic (Virtual VA) claims file associated with the Veteran's claim. A review of the documents in such file reveals that they are either duplicative of the evidence in the paper claims file or are irrelevant to the issue on appeal. 


FINDING OF FACT

The Veteran's epicondylitis of the left elbow has been manifested by full range of motion. There is no evidence of degenerative or traumatic arthritis, ankylosis, flail joint, joint fracture, or impairment of supination or pronation. 


CONCLUSION OF LAW

The criteria for an initial rating in excess of 10 percent disabling for epicondylitis of the left elbow have not been met. 38 U.S.C.A. §§ 1155, 5107 (West 2002 & Supp. 2011); 38 C.F.R. § 4.71a, Diagnostic Code 5024 (2012).


REASONS AND BASES FOR FINDING AND CONCLUSION

Veterans Claims Assistance Act of 2000 

The Veterans Claims Assistance Act of 2000 (VCAA), Pub. L. No. 106-475, 114 Stat. 2096 (Nov. 9, 2000) (codified at 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5106, 5107, and 5126 (West 2002)) redefined VA's duty to assist a claimant in the development of a claim. VA regulations for the implementation of the VCAA were codified as amended at 38 C.F.R. §§ 3.102, 3.156(a), 3.159, and 3.326(a) (2012).

The notice requirements of the VCAA require VA to notify a claimant of what information or evidence is necessary to substantiate the claim; what subset of the necessary information or evidence, if any, the claimant is to provide; and what subset of the necessary information or evidence, if any, the VA will attempt to obtain. 38 C.F.R. § 3.159(b) (2012). The requirements apply to all five elements of a service connection claim: veteran status, existence of a disability, a connection between a veteran's service and the disability, degree of disability, and effective date of the disability. Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006). VCAA notice must be provided to a claimant before the initial unfavorable decision on a claim for VA benefits by the agency of original jurisdiction (in this case, the RO). Id; see also Pelegrini v. Principi, 18 Vet. App. 112 (2004). However, insufficiency in the timing or content of VCAA notice is harmless if the errors are not prejudicial to the claimant. Conway v. Principi, 353 F.3d 1369, 1374 (Fed. Cir. 2004) (VCAA notice errors are reviewed under a prejudicial error rule).

In this case, in a June 2004 letter, issued prior to the decision on appeal, the Veteran was provided notice regarding what information and evidence is needed to substantiate his claim, as well as what information and evidence must be submitted by the Veteran and what information and evidence will be obtained by VA. 

However, the appeal arises from the initial award of service connection. In Dingess, the Court held that in cases in which service connection has been granted and an initial disability rating and effective date have been assigned, the typical service connection claim has been more than substantiated, it has been proven, thereby rendering section 5103(a) notice no longer required because the purpose that the notice is intended to serve has been fulfilled. Dingess, 19 Vet. App. at 490-91; see also Dunlap v. Nicholson, 21 Vet. App. 112 (2007) (section 5103(a) notice is no longer required after service-connection is awarded); Hartman v. Nicholson, 483 F.3d 1311 (Fed. Cir. 2007). Thus, VA's duty to notify in this case has been satisfied. 

The record also reflects that VA has made reasonable efforts to obtain relevant records adequately identified by the Veteran, including service treatment records, post service VA and private treatment records, and VA examination reports. 

The Board also notes that actions requested in the prior remands have been undertaken. Instructions pertinent to the claim being decided included obtaining updated VA treatment records and either obtaining the results of a cited VA examination or scheduling the Veteran for another VA examination to determine the current nature and severity of his left elbow epicondylitis. In response, the RO/AMC obtained all available current VA treatment records from the VA Medical Centers in Spokane, Washington, and Walla Walla, Washington. The RO/AMC also scheduled the Veteran for July 2011 and February 2012 VA examinations. Accordingly, the Board finds that there has been substantial compliance with the prior remand instructions and no further action is necessary. See D'Aries v. Peake, 22 Vet. App. 97 (2008) (holding that only substantial, and not strict, compliance with the terms of a Board remand is required pursuant to Stegall v. West, 11 Vet. App. 268 (1998)). 

As discussed above, the VCAA provisions have been considered and complied with. The Veteran was notified and aware of the evidence needed to substantiate the claim, the avenues through which he might obtain such evidence, and the allocation of responsibilities between the Veteran and VA in obtaining such evidence. The Veteran was an active participant in the claims process by submitting argument to support his claim. Therefore, he was provided with a meaningful opportunity to participate in the claims process and has done so. Any error in the sequence of events or content of the notice is not shown to have affected the essential fairness of the adjudication or to cause injury to the Veteran. See Pelegrini, 18 Vet. App. at 121. Therefore, any such error is harmless and does not prohibit consideration of this matter on the merits. See Conway, 353 F.3d at 1374; Dingess, 19 Vet. App. 473; see also ATD Corp. v. Lydall, Inc., 159 F.3d 534, 549 (Fed. Cir. 1998).

Analysis

The Board has reviewed all the evidence in the appellant's claims file. Although the Board has an obligation to provide adequate reasons and bases supporting this decision, there is no requirement that the evidence submitted by the appellant or obtained on his behalf be discussed in detail. Rather, the Board's analysis below will focus specifically on what evidence is needed to substantiate the claim and what the evidence in the claims file shows, or fails to show, with respect to the claim. See Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000) and Timberlake v. Gober, 14 Vet. App. 122, 128-30 (2000).

Disability evaluations are determined by the application of a schedule of ratings which is based on average impairment of earning capacity. 38 U.S.C.A. § 1155; 
38 C.F.R. Part 4. Separate diagnostic codes identify the various disabilities. Disabilities must be reviewed in relation to their history. 38 C.F.R. § 4.1. Other applicable, general policy considerations are: interpreting reports of examination in light of the whole recorded history, reconciling the various reports into a consistent picture so that the current rating may accurately reflect the elements of disability, 38 C.F.R. § 4.2; resolving any reasonable doubt regarding the degree of disability in favor of the claimant, 38 C.F.R. § 4.3; where there is a question as to which of two evaluations apply, assigning a higher of the two where the disability picture more nearly approximates the criteria for the next higher rating, 38 C.F.R. § 4.7; and, evaluating functional impairment on the basis of lack of usefulness, and the effects of the disabilities upon the person's ordinary activity, 38 C.F.R. § 4.10. See Schafrath v. Derwinski, 1 Vet. App. 589 (1991).

A claimant may experience multiple distinct degrees of disability that might result in different levels of compensation from the time the claim was filed until a final decision is made. See Fenderson v. West, 12 Vet. App. 119 (1999); see also Hart v. Mansfield, 21 Vet. App. 505 (2007). The analysis in the following decision is therefore undertaken with consideration of the possibility that different ratings may be warranted for different time periods.

Disability of the musculoskeletal system is primarily the inability, due to damage or inflammation in parts of the system, to perform normal working movements of the body with normal excursion, strength, speed, coordination and endurance. The functional loss may be due to absence of part or all of the necessary bones, joints and muscles, or associated structures, or to deformity, adhesions, defective innervation, or other pathology, or may be due to pain, supported by adequate pathology and evidenced by visible behavior of the claimant undertaking the motion. Weakness is as important as limitation of motion, and a part which becomes painful on use must be regarded as disabled. See DeLuca v. Brown, 8 Vet. App. 202 (1995); 38 C.F.R. § 4.40 (2012); see also 38 C.F.R. §§ 4.45, 4.59 (2012).

The Veteran has been diagnosed with epicondylitis of the left elbow. Epicondylitis is an unlisted disorder that the RO rated by analogy under Diagnostic Code 5024, which pertains to tenosynovitis. Because of the nature of the Veteran's disability, the Board finds that the rating criteria under Diagnostic Code 5024 that were applied by the RO are appropriate. Pernorio v. Derwinski, 2 Vet. App. 625 (1992); 38 C.F.R. §§ 4.20, 4.21 (2012). The Board finds that the Veteran's disability can also be rated appropriately under Diagnostic Codes 5206, 5207, 5208, and 5213 for limitation of motion of the forearm. Butts v. Brown, 5 Vet. App. 532 (1993). Accordingly, the Board will proceed with an analysis of the Veteran's disability under these diagnostic codes.

Diagnostic Code 5024 is used for rating tenosynovitis, which is to be rated on limitation of motion of affected parts, as arthritis, degenerative. See 38 C.F.R. § 4.71a, Diagnostic Code 5024. Degenerative arthritis is addressed in Diagnostic Code 5003. See 38 C.F.R. § 4.71a, Diagnostic Code 5003. That diagnostic code instructs that degenerative arthritis established by X-ray findings will be rated on the basis of limitation of motion under the appropriate diagnostic codes for the specific joint or joints involved (Diagnostic Code 5200 etc.). When however, the limitation of motion of the specific joint or joints involved is noncompensable under the appropriate diagnostic codes, a rating of 10 percent is for application for each such major joint or group of minor joints affected by limitation of motion, to be combined, not added, under Diagnostic Code 5003. Limitation of motion must be objectively confirmed by findings such as swelling, muscle spasm, or satisfactory evidence of painful motion.

Limitation of motion of the forearm is covered in Diagnostic Codes 5206, 5207, 5208, and 5213. See 38 C.F.R. § 4.71a. The evidence of record shows that the Veteran's dominant arm is the right arm. Therefore, as his disability affects his left elbow, the applicable rating criteria are those involving the minor arm.

Under Diagnostic Code 5206, a 0 percent rating is warranted for flexion limited to 110 degrees. A 10 percent rating is warranted for flexion limited to 100 degrees. A 20 percent rating is warranted for flexion limited to 90 degrees or 70 degrees. A 30 percent rating is warranted for flexion limited to 55 degrees. A maximum 40 percent rating is warranted for flexion limited to 45 degrees. 38 C.F.R. § 4.71a, Diagnostic Code 5206. 

Under Diagnostic Code 5207, a 10 percent rating is warranted for extension limited to 45 or 60 degrees. A 20 percent rating is warranted for extension limited to 75 degrees or 90 degrees. A 30 percent rating is warranted for extension limited to 100 degrees. A maximum 40 percent rating is warranted for extension limited to 110 degrees. 38 C.F.R. § 4.71a, Diagnostic Code 5207. 

Under Diagnostic Code 5208, a 20 percent rating is warranted for flexion limited to 100 degrees and extension limited to 45 degrees. 38 C.F.R. § 4.71a, Diagnostic Code 5208. 

Under Diagnostic Code 5213, a 10 percent rating is warranted for supination limited to 30 degrees or less. A 20 percent rating is warranted for pronation with motion lost beyond the middle of the arc, pronation with motion lost beyond the last quarter of arc where the hand does not approach full pronation, or the hand fixed in full pronation or near the middle of the arc or moderate pronation due to bone fusion. A 30 percent rating is warranted for the hand fixed in supination or hyperpronation due to bone fusion. 38 C.F.R. § 4.71a, Diagnostic Code 5213. 

The normal range of motion of the elbow is from 0 degrees extension to 145 degrees flexion; normal forearm pronation is from 0 to 80 degrees, and normal forearm supination is from 0 to 85 degrees. 38 C.F.R. § 4.71, Plate I (2012). 

Post-service VA and private medical records dated from August 2004 to January 2012 show that the Veteran received intermittent treatment for left elbow pain. A November 2010 x-ray of the left elbow was unremarkable. 

On VA examination in November 2004, the Veteran complained of pain at rest in the left elbow that had not necessarily been aggravated by movement. He reported occasional shooting pain that went down the arm to the wrist as well as numbness in the little finger in the left hand. He also indicated weakness in the left elbow and some stiffness after inactivity, but no swelling, local heat, or redness. He stated that he did have instability in the left elbow because he had dropped things at times but denied any elbow locking. He also reported flare-ups occurring when he did certain things such as push-ups. He complained that he had some trouble with sleep because if he turned in a certain way and irritated the left elbow, it would wake him up and cause him more pain. He denied the use of any assistive aids. 

Examination revealed that the left elbow in general appeared to be normal. There was no deformity or tenderness. Range of motion testing showed 145 degrees flexion with pain on the end of range of motion. For movement against pressure, there was only 40 degrees flexion with worse pain on the end of range of motion. The Veteran had no pain shooting down the lower arm to the little finger or any other finger. Tinel's sign in the left wrist was negative. There was good action and strength in the muscles of the thenar eminence and good dexterity of the fingers. The Veteran was diagnosed with epicondylitis of the left elbow. 

The Veteran submitted lay statements from his wife dated in January 2006, July 2009, and September 2011 in support of his claim. The Veteran's wife revealed, in pertinent part, that she had known the Veteran since 1991 and married him in 2003. She reported that after the Veteran returned from his deployment to Iraq, he complained of pain in his elbows and a numbness or tingling sensation in his fingers. She observed that the Veteran's left arm caused him more discomfort than his right one. She indicated that the Veteran was constantly losing sleep at night because if he slept on one side too long, he had to switch to the other side in order to release the pressure that was being put on his elbows, causing him to toss and turn all night. She also stated that the Veteran experienced discomfort from holding her hand, could not wrap his arms around her at night anymore due to the pain, and could not hold their young daughter without experiencing left elbow pain. She reported that after a shift at his current job, the Veteran's arms would hurt when he came home. She observed that the Veteran's left elbow pain was becoming more intense, lasting longer in duration, and more difficult to manage. She stated that if the Veteran's elbow got touched or if he moved it in a certain way, it would cause him pain. She also reported that he did not have full movement capacity of the left arm. 

On VA examination in July 2011, the Veteran complained of gradually worsening left elbow pain. He described it as a constant, aching pain that was 4-5/10 in intensity. It was aggravated by lifting heavy objects, and nothing relieved the pain. He also reported tenderness of the elbow. Examination revealed left elbow tenderness, pain at rest, and guarding of movement. The Veteran expressed a moderate degree of tenderness when the examiner palpated the medial epicondyle of the left elbow. Range of motion testing of the left elbow showed 145 degrees flexion, 0 degrees extension, 80 degrees pronation, and 85 degrees supination. There was objective evidence of pain with active motion and following repetitive motion. However, there were no additional limitations after repetitive motion. The Veteran was diagnosed with medial epicondylitis of the left elbow. The examiner noted that the Veteran had been doing a lot of typing at work since 2009, and the elbow pain slowed him down. However, the elbow pain did not stop him from doing the typing or performing his work duties. 

At a February 2012 VA examination, the Veteran was diagnosed with left elbow lateral epicondylitis. He reported flare-ups of elbow pain that were very minimal and lasted 1 to 2 hours after doing a task involved with pushing and pulling. He stated that these flare-ups occurred less than every 2 weeks. Range of motion testing showed 145 degrees flexion and 0 degrees extension. There was no objective evidence of painful motion. Upon repetitive testing, the Veteran did not have additional limitation in range of motion or functional loss and/or impairment of the elbow and forearm. There was localized tenderness or pain on palpation of the joints or soft tissue of the left elbow or forearm. Specifically, the Veteran had mild tenderness of the lateral epicondyle just distal to the epicondyle with no swelling. The Veteran had normal elbow muscle strength. There was no evidence of ankylosis, flail joint, joint fracture, and/or impairment of supination or pronation. The Veteran did not have olecranon tenderness, inflammation of the bursa, or effusion. An x-ray of the left elbow showed no degenerative or traumatic arthritis. Regarding neurological findings, the examiner noted that a 2007 EMG did not support a sensory neuropathy or compression neuropathy. She also stated that the examination did not support any evidence of neuropathy. The Veteran was found to have very intermittent left ulnar nerve irritation at the lateral epicondyle which was most likely caused by how he used his elbow at work. The Veteran did not do any home physical therapy, had no epicondyle strap, and had not had any orthopedic evaluation for steroid injections. Phalen's and Tinel's were negative bilaterally. There were no paresthesias of the left hand or fingers. The Veteran had normal grips and no hypothenar atrophy. 

On the above examinations in November 2004, July 2011, and February 2012, the Veteran had a full range of left elbow extension and flexion and forearm pronation and supination, with no additional limitation caused by pain or repetitive use. Thus, a compensable rating is not warranted based on limitation of motion, let alone a rating in excess of 10 percent. 

Even considering the Veteran's subjective complaints of pain, the medical evidence of record does not show any additional limitation of motion or functional impairment that would support an evaluation in excess of the 10 percent rating presently assigned. Indeed, the 10 percent rating currently assigned contemplates his subjective complaints and functional impairment, as his range of motion does not support a compensable rating. See DeLuca, 8 Vet. App. 202; 38 C.F.R. § 4.40; see also 38 C.F.R. §§ 4.45, 4.59.

Ratings in excess of 10 percent disabling could also be assigned for ankylosis of the elbow; elbow flail joint; or malunion or nonunion of the ulna or radius. See 38 C.F.R. § 4.71a, Diagnostic Codes 5205, 5209, 5210, 5211, 5212. However, none of these disabilities have been reported after examination and review of x-rays, and the Veteran has not reported having any of these disabilities. After examination and 
x-ray, it was noted that the Veteran did not have any of these disabilities. 

Regarding any neurological symptoms related to the Veteran's left elbow disability, the Board notes that there was no evidence of any neuropathy found at the most recent VA examination in February 2012. The examiner explained that any intermittent left ulnar nerve irritation at the lateral epicondyle was most likely caused by how the Veteran used his elbow at work. Additionally, the Board notes that the RO granted service connection for numbness of the fingers of the left hand in a June 2009 rating decision, and that any neurological symptoms stemming from the Veteran's left elbow disability have been contemplated in this disability rating. 

The Board concludes that the medical findings on examinations are of greater probative value than the Veteran's and Veteran's wife's allegations regarding the severity of his left elbow epicondylitis. The symptomatology noted in the medical and lay evidence has been adequately addressed by the 10 percent evaluation assigned and do not more nearly approximate the criteria for a higher evaluation at any time during the relevant period on appeal. See 38 C.F.R. § 4.71a, Diagnostic Code 5024 (2012); see also Fenderson, supra. 

The Board has also considered whether the Veteran's left elbow epicondylitis presents an exceptional or unusual disability picture as to render impractical the application of the regular schedular standards such that referral to the appropriate officials for consideration of an extraschedular rating is warranted. See 38 C.F.R. § 3.321(b)(1) (2012); Bagwell v. Brown, 9 Vet. App. 337, 338-39 (1996). The threshold factor for extraschedular consideration is a finding that the evidence before VA presents such an exceptional disability picture that the available schedular evaluations for that service-connected disability are inadequate. See Fisher v. Principi, 4 Vet. App. 57, 60 (1993) ("[R]ating schedule will apply unless there are 'exceptional or unusual' factors which render application of the schedule impractical."). Here, the rating criteria reasonably describe the Veteran's disability level and symptomatology, and provide for higher ratings for additional or more severe symptomatology than is shown by the evidence. His 10 percent rating contemplates his subjective complaints and functional impairment. Thus, his disability picture is contemplated by the rating schedule, and the assigned schedular evaluation is, therefore, adequate. See Thun v. Peake, 22 Vet. App. 111, 115 (2008). Consequently, referral for extraschedular consideration is not warranted.

In reaching the above conclusion, the Board has considered the applicability of the benefit of the doubt doctrine. However, as the preponderance of the evidence is against the Veteran's claim, that doctrine is not applicable in the instant appeal. See 38 U.S.C.A. § 5107(b); Ortiz v. Principi, 274 F.3d 1361, 1364 (Fed. Cir. 2001); Gilbert v. Derwinski, 1 Vet. App. 49, 55-57 (1990). 


ORDER

An initial evaluation in excess of 10 percent for epicondylitis of the left elbow is denied.



____________________________________________
K.A. BANFIELD
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs